280 N.J. Super. 525 (1995)
656 A.2d 20
CONCETTA MAROTTA, PLAINTIFF,
v.
NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOC. BY AND THROUGH ITS SERVICING CARRIER, LIBERTY MUTUAL INS. CO., DEFENDANTS. NEW JERSEY AUTOMOBILE FULL INS. UNDERWRITING ASSOC. BY ITS SERVICING CARRIER LIBERTY MUTUAL INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
ANTHONY J. MAROTTA, CONCETTA MAROTTA, JACK BERK, EILEEN BERK, INTERNATIONAL INSURANCE COMPANY (A/K/A CRUM & FORSTER PERSONAL INSURANCE) AND THE AMERICAN INSURANCE COMPANY (A/K/A FIREMAN'S FUND INSURANCE CO.), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 8, 1995.
Decided March 31, 1995.
*526 Before Judges SKILLMAN, WALLACE and KLEINER.
Slimm & Goldberg, attorneys for appellant New Jersey Automobile Full Insurance Underwriting Association (Laurie Harrold Rizzo, of counsel and on the brief).
Law Offices of Stanley P. Stahl, attorneys for respondent International Insurance Company (Beth A. Wright and Sharon K. Galpern, on the brief).
McDonald, Nathan & Hendershot, attorneys for respondent The American Insurance Company (Nicholas J. Hendershot, on the brief).
The opinion of the court was delivered by KLEINER, J.A.D.
Plaintiff New Jersey Automobile Full Insurance Underwriting Association ("NJAFIUA") by its servicing carrier, Liberty Mutual Insurance Company, appeals from an order denying its motion for summary judgment in a declaratory judgment action seeking a determination of insurance coverage.
On October 5, 1987, Anthony Marotta and Concetta Marotta were residents of Philadelphia. Anthony owned a condominium in Wildwood, and the Marottas used that condominium regularly during the summer and occasionally on non-summer weekends. On that date, Anthony, representing himself as a New Jersey resident, applied for a $500,000 single limit automobile liability insurance policy which was issued by plaintiff. The policy was renewed on October 5, 1988.
On October 10, 1988, Anthony struck a motor vehicle in Philadelphia operated by defendant Jack Berk, in which Eileen Berk was a passenger. The Berk vehicle was insured by defendant International Insurance Company ("International"). That vehicle was also insured under a business policy by American Insurance *527 Company ("American"). Berk's insurance policies both provided uninsured/underinsured motor coverage with policy coverage limits less than the liability insurance coverage limits insuring the Marotta vehicle.
In June 1989, the Berks filed a complaint in the Court of Common Pleas in Philadelphia for compensatory damages and named Anthony Marotta as defendant. An answer was filed by the NJAFIUA through its servicing carrier. That suit is still pending.
Thereafter, based upon an investigation, plaintiff concluded that Marotta had misrepresented facts which it contended rendered Marotta ineligible for a policy of liability insurance issued by the NJAFIUA. N.J.S.A. 17:30E-3m, provides in part:
"Qualified applicant" means a person domiciled in New Jersey who is an owner of an automobile registered, or to be registered within 60 days of application, and principally garaged in this State, who has been refused coverage in the voluntary market, and who cannot be or is not placed in the voluntary market through the procedures established pursuant to subsection a. of section 26 of P.L. 1983, c. 65 (C.17:30E-14).
More specifically, plaintiff contended that Marotta's motor vehicle was not registered or principally garaged in New Jersey, and that Marotta's domicile was in Pennsylvania.
Plaintiff then filed a complaint for declaratory judgment seeking to avoid all claims against the policy of liability insurance it had issued Marotta, or alternatively, to limit the extent of insurance coverage to the statutory mandatory compulsory insurance of $15,000 per person, $30,000 per accident and $5,000 property damages prescribed in N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1.[1]
After discovery was complete, plaintiff filed a motion for summary judgment, and defendants International and American each *528 filed separate cross-motions for summary judgment seeking an order declaring that plaintiff's entire policy limit of $500,000 must be provided to indemnify Marotta against the Berks' pending claims.[2] After oral argument, the motion judge denied plaintiff's motion and granted summary judgment on each defendant's cross-motion. We reverse and conclude that plaintiff must indemnify Marotta only to the extent of the compulsory insurance proscribed in N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1.
The responsibility of an insurance carrier for claims arising prior to a retroactive revocation of a liability insurance policy was most recently discussed in Dillard v. Hertz Claim Management, 277 N.J. Super. 448, 650 A.2d 1 (App.Div. 1994). In Dillard, the policy of a host driver was canceled retroactively for nonpayment of the initial insurance premium. Id. at 449, 650 A.2d 1. The date of revocation was subsequent to an automobile accident in which the host driver's passenger was injured. Ibid. Dillard relied upon our decision in Fisher v. New Jersey Automobile Full Insurance Underwriting Ass'n, 224 N.J. Super. 552, 557-58, 540 A.2d 1344 (App.Div. 1988), where a liability policy was retroactively void due to the lack of qualification of the original named insured. Dillard, supra, 277 N.J. Super. at 453, 650 A.2d 1. Despite the retroactive revocation, an injured passenger was entitled to recover personal injury protection benefits.
Our decision in Dillard, supra, did not require a determination of the extent of insurance coverage available to satisfy the claim of the injured passenger. That is the precise question posed by this appeal.
N.J.S.A. 39:6-48 provides:

*529 No motor vehicle liability policy shall be issued or delivered in this State, as proof of financial responsibility, unless such policy discloses the name, address and business of the insured, the coverage afforded by the policy, the premium charged therefor, the policy period, the limit of liability and the agreement that the insurance thereunder is provided in accordance with the coverage defined in sections twenty-four and twenty-five of this act[1] and in this section and is subject to all of the provisions of this act.
The motor vehicle liability policy shall be subject to the following provisions which need not be contained therein:
(a) The liability of a company under a motor vehicle liability policy shall become absolute when loss or damage covered by the policy occurs and the satisfaction by the insured of a final judgment of the loss or damage shall not be a condition precedent to the right or duty of the carrier to make payment on account of the loss or damage. No such policy shall be canceled or annulled as respects any loss or damage by any agreement between the carrier and the insured after the insured has become responsible for the loss or damage and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against a person for the loss of damage if the judgment debtor was at the accrual of the cause of action insured against liability therefor under a motor vehicle liability policy, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment. The policy may provide that the insured or a person covered by the policy shall reimburse the company for payments made on account of an accident, claim or suit involving a breach of the terms, provisions or conditions of the policy; and, if the policy provides for limits in excess of the limits designated in this section the insurance carrier may plead against the judgment creditor, with respect to the amount of the excess limits of liability any defenses which it may be entitled to plead against the insured. The policy may further provide for the prorating of the insurance thereunder with other applicable valid and collectible insurance.
(b) ....
[1] Sections 39:6-46, 39:6-47 (repealed).
[Ibid. (emphasis added).]
As noted by the statutory footnote, sections N.J.S.A. 39:6-46 and N.J.S.A. 39:6-47 of the original act have been repealed.[3] *530 Automobile liability insurance is now mandated by the "New Jersey Automobile Reparation Reform Act," N.J.S.A. 39:6A-1 to -35, and particularly by N.J.S.A. 39:6A-3, and by N.J.S.A. 39:6B-1, found within the chapter entitled "Compulsory Motor Vehicle Insurance." N.J.S.A. 39:6A-3 and N.J.S.A. 39:6B-1 contain identical language: "Every owner or registered owner of an automobile registered or principally garaged in this State shall maintain automobile coverage." The mandated coverage is $15,000 per person, $30,000 per accident, and $5,000 for property damage.
In analyzing the provisions of N.J.S.A. 39:6-48, we note that the statute encompasses a general rule applicable to automobile insurance:
"It has been universally held or recognized that an insurer cannot, on the ground of fraud or misrepresentations relating to the inception of the policy, retrospectively avoid coverage under a compulsory or financial responsibility insurance law so as to escape liability to a third party...."
[Williams v. American Home Assurance Co., 121 N.J. Super. 351, 364, 297 A.2d 193 (App.Div. 1972) (emphasis added) (quoting 7 Am.Jur.2d, Automobile Insurance, § 9 at 303 (1963), certif. denied, 62 N.J. 260, 300 A.2d 344 (1973)).]
N.J.S.A. 39:6-48 also provides that a liability carrier may plead against a judgment creditor of its insured any defense which the insurance carrier had against its insured when the judgment creditor seeks to recover any sum in excess of mandatory insurance coverage. No defense is available to the insurance carrier for the mandated insurance coverage. Based upon N.J.S.A. 39:6-48, if Jack Berk, for example, were to recover a judgment against Marotta in the litigation now pending in Philadelphia, he would *531 become a judgment creditor of Marotta and would then be entitled to assert a claim against the NJAFIUA for the payment of that judgment up to $15,000. Any claim in excess of $15,000 will be subject to the defense, if proven, that the policy of insurance was void ab initio due to Marotta's misrepresentation of eligibility.
The facts of this case are somewhat analogous to State Farm Mut. Auto Ins. Co. v. Wall, 92 N.J. Super. 92, 222 A.2d 282 (App.Div. 1966), where an insurance carrier sought to disclaim all coverage under a policy issued after the named insured had misrepresented facts to the insurance carrier. The policy as issued provided coverage of $25,000 per person, $50,000 for each occurrence and $5,000 property damage and collision damage and medical payments. Id. at 96, 222 A.2d 282. The named insured, Wall, struck another vehicle occupied by three claimants. Ibid. Before Wall's misrepresentations were discovered, State Farm paid Wall's collision loss and a portion of his medical loss. Ibid. After State Farm learned of Wall's misrepresentations, it declared the policy void ab initio because of his fraud and misrepresentations, and it returned the premium paid by Wall. Ibid. The three injured claimants contended that even though Wall had not been required to comply with the "Motor Vehicle Security-Responsibility Law," L. 1952, c. 173, N.J.S.A. 39:6-23 et seq., the noncancellable provisions of N.J.S.A. 39:6-40 and -48, by virtue of the so-called "Steliga rule," Steliga v. Metropolitan Casualty Ins. Co., 113 N.J.L. 101, 172 A. 793 (Sup.Ct. 1934), aff'd o.b., 114 N.J.L. 156, 176 A. 331 (E. & A. 1935), applied. State Farm, supra, 92 N.J. Super. at 100, 222 A.2d 282. The court agreed:
Thus we hold that the vitality of the Steliga rule subsists and applies to all persons who could be required to furnish proof of financial responsibility under N.J.S.A. 39:6-31, irrespective of the fact that the director has not required such proof to be furnished. Since Wall was of that class, the policy issued him by State Farm was rendered noncancellable as against the injured claimants by virtue of N.J.S.A. 39:6-40 and 48.
[Id. at 103, 222 A. 282.]
The court, however, did not declare that coverage of $25,000/$50,000/$5,000 was applicable. The court concluded:

*532 Accordingly we hold that by virtue of the Steliga rule Wall's policy, to the extent of the statutory limits of $10,000 per person, $20,000 per occurrence, and $5,000 property damage (N.J.S.A. 39:6-31), may not be cancelled by State Farm as against plaintiffs Phillips, Simmons and Washington, irrespective of the absence of certification and regardless of any fraudulent misrepresentations by Wall. However, Wall will be obliged to reimburse State Farm, pursuant to the express terms of the policy, for any sums it may be required to pay to the injured parties, as well as for the $2,034.11 it paid Wall for his collision loss and medical expense.
[Id. at 104, 222 A.2d 282 (citation omitted).]
The retroactive revocation of Wall's policy resulted in the return of Wall's premium and the denial of any liability to Wall for his collision loss and medical expense. It also resulted in his indemnity for any future claim of the three injured parties to the extent of the mandatory insurance, mainly $10,000 per annum, $20,000 per occurrence and $5,000 property damage, proscribed by N.J.S.A. 39:6-31. Ibid.
Based on the cited analysis, plaintiff owes an obligation to provide indemnity to Marotta against the Berks' claims equivalent to our compulsory insurance law, N.J.S.A. 39:6A-3 and N.J.S.A. 17:30E-1, which established the NJAFIUA. A driver such as Berk has the right to expect that all other drivers will be insured to the extent required by compulsory insurance. If additional protection is desired, a vehicle owner may purchase uninsured/underinsured coverage through the owner's own insurance company. Berk has done that, and both he and his wife may look to their own carriers, International and American, for the payment of any claim which exceeds the noncancellable coverage on the Marotta vehicle. Our conclusion is also within the realm of expectation of both International and American and would be in accord with the specific provisions of N.J.S.A. 39:6-48.
That portion of the order for summary judgment which imposed liability on plaintiff is affirmed. The extent of insurance coverage as ordered by the motion judge is reversed. If it is ultimately determined that plaintiff was entitled to retroactively void its policy as issued to Marotta, then insurance coverage will be $15,000 per person, $30,000 per occurrence and $5,000 property damage. If plaintiff is unsuccessful in establishing its right to *533 retroactively void its policy, then the insurance coverage of $500,000 single limit shall be applicable. The matter is remanded to the trial court for further proceedings.
NOTES
[1] When plaintiff filed its declaratory judgment action, another declaratory judgment was pending in which Concetta Marotta was named as plaintiff and the NJAFIUA, by and through its servicing carrier, Liberty Mutual Insurance Company, was named as a defendant. That suit arose from the denial of personal injury protection benefits to Concetta Marotta for injuries she sustained in another automobile accident. The two declaratory judgment actions were consolidated in the Law Division. The suit instituted by Concetta Marotta has been settled and is not otherwise affected by this appeal.
[2] For the purpose of the motions for summary judgment only, defendants International and American stipulated that plaintiff was entitled to retroactively revoke its insurance policy. That issue is yet to be litigated.
[3] The repealed statutory sections were originally a part of the Motor Vehicle Security Responsibility Plan approved May 10, 1952 (L. 1952, c. 173, §§ 21 to 25), which required, in part, that a motor vehicle liability policy furnished as proof of financial responsibility insure to the amount or limit of $5,000 per person, $10,000 per accident, and $1,000 for property damage, as set forth in N.J.S.A. 39:6-46. That requirement was made applicable to nonresident policies of insurance issued by companies authorized to do business in New Jersey by N.J.S.A. 39:6-47.

The statutory mandated minimum insurance coverage required in policies furnished as proof of financial responsibility was increased by L. 1958, c. 95, § 6 to $10,000 per person, $20,000 per accident, and $5,000 for property damage, effective January 1, 1959. Thereafter, L. 1972, c. 199, § 11, effective January 1, 1973, increased the mandated minimum insurance coverage under the "Assigned Risk Plan."
N.J.S.A. 39:6B-1 (L. 1972, c. 197, § 1), effective January 1, 1973, mandated compulsory insurance for all motor vehicles in the amount of $15,000 per person, $30,000 per accident, and $5,000 for property damage. It was obviously designed to replace predecessor statutes dealing with financial responsibility and/or the assigned risk plan.